Good morning everyone. Please take your seat. Would the attorneys presenting today please step forward and introduce yourselves for the record. Good morning. Good morning. Could you please state your name please? Edmond Boland, B-O-L-A-N-D, B-F-E-F-L-L-A-N-D, Barbara Mowry. The plaintiff here Barbara Mowry and her family reside in Evergreen Park, Illinois. For many years Mrs. Mowry enjoyed the benefit of having her uncle James Brogan live next door to her. Both lived in single family residences. Mr. Brogan however passed away in September of 2001. His estate was probated in the circuit court of Cook County. And under the terms of his will Mrs. Mowry inherited his home next door. Unbeknown to Mrs. Mowry at the time of the inheritance or at any time until the notices were received by the Cook County Assessor's Office, she was unaware of a homestead exemption being applied to Mr. Brogan's home. So from 2001 when she inherited the property until 2013 when she first received notices she had no idea that homestead exemptions were being applied. Is that a legal defense? It is not strictly a legal defense but there's an equitable issue that's involved here and so I bring that up to the court's attention for that reason. Sure. Is there anything improper about the legislature deciding that they want to reach back and tax exemptions that weren't permissible in any way? Well there's some... We have a retroactive statute simply because the legislature did not establish that to be a statement of their temporal reach. I believe that we can, Your Honor, but it must be clearly expressed in the statute, in the body of the statute. It's not something that can be just buried in the text of the statute. It must be clearly expressed. In the cases that we have cited we show that where the legislature did intend to reach back and apply it date and say, do they have to say in the statute that this act will apply to erroneous home owners exemptions that were taken for the last three years before the current tax year? Do they have to say it that way? Yes, I think that they do. All right. What case would you say says that? Pardon me? What case would you say says they have to use that kind of language? Well, the Landgraf case, the U.S. Supreme Court case is the one that I think sets the test. And Commonwealth Edison, which is the Illinois Supreme Court case, also deals with that. But we've also got an issue here of how far back they can go back to tax, a retroactive tax. And there's some indication, at least in a concurring opinion by Justice Sandra Day O'Connor of the U.S. Supreme Court, that one year, going back one year is even possibly problematic constitutionally. But we don't have any clear expression from the Illinois Supreme Court as to a time frame. Well, have they indicated their temporal reach when they say that if you have one erroneous exemption, the legislature can go back three years. If you have multiple erroneous exemptions, which isn't this case, you can go back six years. And so is there that is what the Board is arguing is their statement of temporal reach, that they can go back three years for a single improper exemption. Well, this is basically a statutory penalty when you come right down to it. Well, they have a specific penalty in the statute that was not imposed, correct? The 50 percent? In fact, I don't think she could have, I don't think there could have been a 50 or whatever amount it was. I don't think there could have been a penalty imposed against her because there's an amnesty provision and there's also a provision that says that I think I'd have to reference it, but I think it says that for the 2013 going back first few years, if there's only one exemption, the only thing that the legislature could do would be to charge interest. Are you familiar with that provision that I'm thinking of? No. Actually, I believe what Your Honor is referring to is a provision that says that inherited property, there would be a charge, but interest would still be, would still accrue. Right, right. No penalty though. No penalty for Mrs. Mulvey, that's correct, because she inherited. But we're dealing with other situations as well when you look at the breadth of this, of this retroactive, or attempt to apply it retroactively. What about the provisions that allow for the IRS to go back, or any taxing body go back 20 years if you've, you know, somehow made a mistake on your taxes? And then the situation where an individual, these are the cases they say, where an individual can recoup, can go, has 20 years in order to recover taxes that were improperly assessed. Well, with an income tax, you would have filed a return. As you say, if you go back because you made a mistake, that's not enacting a new tax. This is enacting a new penalty that applies, going forward, but also applying it retroactively to conduct that occurred in the past. And that's where I think the fatality or the deficiency of this statute lies. Then how do you reconcile this with the Supreme Court's Hayashi decision, where you had, I think it was medical doctors or individuals in the medical field who, going forward, could not renew their medical licenses based on past convictions they had for assaults? The critical distinction with Hayashi is that Justice Burke, Justice Anberg, Justice Anberg and the Illinois Supreme Court found that the statute applied prospectively, only prospectively, not retroactively, number one. That's a very critical distinction there. And didn't she do that based on the determination that the language in that statute indicated the temporal reach because the legislature used the and therefore it wasn't a retroactive application or improper retroactive application of a statute? Yes, but also, too, that was a regulatory statute dealing with the public health and welfare, which is different than a revenue measure. Well, how would we look at it differently? Pardon me? What would you suggest that we, how we look at it differently because it's a taxing statute versus a regulatory statute? Because the public had no way of knowing that these were improper and therefore they were going to be liable for interest in penalties in the future. But doesn't, well, here, wasn't the homeowner's exemption, didn't it come into place around 1850? I don't recall when it came into place. But in any event, the following position here is Section 4 of the Statute on Statutes, which has been in place since 1874. Unchanged in its wording since 1874. But was anyone ever entitled, since I think about 1850, to take a homeowner's exemption for a property where they didn't reside? I mean, there's multiple bases for which you can get a homeowner's exemption. But the only one that would apply here would be to be living in the property. It is correct that today you must reside in the property to be able to No, but I think you always, in order to have a homeowner's exemption going back at least more than, I think, 150 years, in order to take a homeowner's exemption, you have to live in the property. And you're only, you've never been entitled to take two homeowners' exemptions for two different houses. You don't get it for a recreational home. You don't get it for a second home. Because you can't really live, you can't have your home in two different houses at the same time. But Mr. Bullen, you're not claiming that she was ever entitled to the exemption, correct? You're just, if I understand your argument correctly, it's just that they can't go back that far and get this penalty and the interest on it and everything else. You're not claiming that somehow, you know, well, they blew it so she was entitled to it during that time period. No, that's right. But they can't go back. And that's because of the retroactive application of it. But Justice Ellis mentioned earlier in the argument, her knowledge or lack of knowledge is not a defense. But from an equitable standpoint, this woman had no knowledge of it. And the evidence is uncontradicted that her husband handled the payment of the tax bills. She merely signed the check for this particular property because the title was in her name alone. And is the government, Cook County in this case, are they under any type of obligation to let them know, like, hey, you've claimed two homestead exemptions here, and if they don't do it, then can they still go back and get it? Is that part of an equitable argument? The answer to your question is yes and no. Yes, they are obligated to give them notice. Now, there's nothing in this record indicating that notice was in fact given. And if you look at the legislative history of this statute, it's really kind of a ball of stuff in the sense that the legislature, the statute, the text of the statute says it's effective June 1 of 2013, but it didn't actually become effective until the middle of July of 2013. It appears that it was intended to be applicable to the second installment of the 2012 tax bills, which would in the normal course of things be mailed out in the late summer, early fall of 2013, and the assessor probably to put notices in those tax bills. But there's nothing in this record showing that notice was in fact given or how notice was given or anything of that nature. The record is totally barren of that. Is there – when we talk about a retroactive impact, the language generally used is would impair rights a party possessed, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. Under these three types of scenarios, if you agreed that you're not entitled to take a homeowner's exemption in a home that you don't live, are you arguing that there was some impairment of a right possessed? No, I'm arguing – Increasing a party's liability for past conduct? Correct. All right. And don't the cases interpreting that say that simply because there's an antecedent fact doesn't make it creating liability? She was never entitled to this other exemption, was she? I don't know that she was entitled to it in a sense, but, you know, in order to utilize an entitlement analysis, I think there is some requirement that the party be aware that it was in place. She made no application for this exemption. This is a property that she came upon, so to speak, and it already had the exemption, and she had no knowledge of that. So she couldn't have taken – until she became aware that there was something wrong here, she couldn't take action to correct it. Didn't the statute actually have an amnesty for anybody that was taking two exemptions in 2013? Doesn't it have a provision that if you pay the erroneous exemption within the first taxing year, you won't have any interest or penalties or anything? Well, in fact, that amnesty provision was for about five and a half months. So that's why I say that presumably the assessor was going to put a notice in the second installment tax bill to give the people a little bit of notice. An amnesty provision is basically a revenue inducement to induce people to come forward and admit that they had this exemption and to pay the amount of the tax that is due. That's basically all it is. Are any of these statutes concerned with knowledge or equity? Not the statute itself, but the case law, I think, has an element of equity that's involved with it, and we cite the case to you in the reply brief, the Marks case, indicating that there's an element of equity that's involved in interpreting these. Mr. Boland, people make mistakes on their taxes all the time, and sometimes they don't do it intentionally, they do it mistakenly, and the government doesn't always catch it right away. You could make a mistake on your income tax. You could declare a deduction to which you're not entitled, and the government may never know about it. I'm sure it's probably true a lot of the time, or they may find out about it two years later. You might also mistakenly, I accept that this was probably a mistaken homestead exemption by your client. It's certainly possible, probable even. But the government doesn't necessarily catch these things right away. Is there something inherently inequitable about the government figuring out later, not within the same tax year, for example, but maybe even a few years later, that in fact people were not paying the taxes they were supposed to pay, and then doing something about that fact, recouping that tax money? Well, both the federal tax law and the state tax law impose statutes of limitations on those types of things, except in the case of a fraud, and fraud, of course, involves some intent. Basically, and I'm not conversant with the exact timeline, but I believe it's three years after the filing of the return, perhaps five years after the filing. Do we have a statute of limitations question here? No, we don't. This is a retroactive application of new law and a new tax, a new penalty that is being imposed. Had your client been, for lack of a better word, caught making the improper homestead exemption at the time, these three years that are in question, 2010, 11, and 12 are we talking about? Yes. Okay. Had she been caught in 2010, she would have been presumably forced to make good on the amount of tax that she didn't pay, right? I mean, there would have been some penalty or something. Well. Is that right? Well, here. The statute we're dealing with had an effective date. No, not this statute. Before this statute. Go back to the year 2010 when she mistakenly does not, claims a homestead exemption to which she is not entitled. There would have been some recourse by the government at that point in time. Had that been caught at that time, right, they would have presumably, I mean, you'd have to. Well, then we wouldn't need the statute. I know, but bear with me here. So if that were to happen, if she had been caught at the time, they would have presumably made her pay what she owed, possibly even a penalty. And what I'm trying to figure out is, does this statute do something to her that wouldn't have been done to her had she been caught at the time? Does it add penalties that would not have been there at the time? Is she somehow financially injured by the fact that this is all happening now through this statute than had she been caught at the time? I don't believe that there is any mechanism in the tax code, the property tax code, dealing with the scenario that Your Honor poses. So perhaps maybe the assessor could sue her to collect her on some equitable theory. But there is nothing in the statute that authorizes a back tax under these circumstances. There are provisions in this, and that's, I believe, why the assessor pushed to have this bill introduced in the legislature, because that was becoming a rampant problem, as reported in the secular press sometime later. But didn't they always have a mechanism to enforce any taxes that weren't paid? So they sent her a notice in 2010 saying, you're not entitled to the Homestead exemption, therefore you owe us whatever the amount is. And if she didn't pay it, couldn't they always attach a lien to the property? Not prior to the time of this statute. There are provisions for back taxing omitted properties, for example, property that just totally fell through the cracks and never got a set for particular taxes. You're not telling us that the government would have had no recourse. I mean, if Cook County realized, hey, this woman is declaring a Homestead exemption on two properties at the same time, she doesn't live in her uncle's, that's a wrong exemption, but we can't do anything about it. I mean, surely you're not saying that. No, I said that they could possibly go to court and file an equitable action against her to recover that. But there was no mechanism in the tax code prior to the enactment of this statute dealing with erroneous Homestead. I think you've argued it's harsh and oppressive in this case to go back for three years. Yes. And tell me, I'm having difficulty grasping the idea that it's harsh and oppressive to go back three years to recoup an exemption for the homeowner where that person didn't or was not ever entitled to that exemption. Now, they didn't go back 20 years, they didn't go back 10, but what is harsh and oppressive about going back three years, which is what they codified, for an exemption that the person was never entitled to in the first instance? What is harsh and oppressive about that? And I don't want to diminish the significance of the amount of money. I think for each year it comes out to somewhere in the neighborhood of $1,500. So for this homeowner, what is harsh and oppressive about that? Well, we're dealing with the totality of the statute, because there's a portion of the statute that allows them to go back as far as six years. That's for people that have a case. They have multiple, that's correct. But we're dealing with the entire statute. And we're saying that the retroactive application of the statute as written is harsh and oppressive. Okay, there's another case pending, I believe, that you cited in your brief. And I think that case involves the, and I'm not asking you to comment on that case, but that case permits the legislature to go back six years, and it involves multiple erroneous exemptions. And I'm not sure that, you know, we would compare that to this, but what I'm asking you about this case is, is there something innately oppressive about going back three years to recoup money on a home that was never, ever permissible? Taking that exemption was not something that, whether, I mean, it's not about intent here or anything like that. There's no question about intent or anything. It's just that, hey, house next door, you know, they weren't paying attention to the exemption. It was just year after year being taken. But what is oppressive about the idea that, hey, you were never entitled to this for all those years. So we're going to go back three. Penalizing them for past conduct that they were not aware was improper. But that's not really accurate, is it, when you know that a homeowner is not entitled to take an exemption for a home that they don't live in. I mean, I'm fairly certain that the exemption that was created has been around for a long, long time. And this is not one of the exemptions. You get to take an exemption for the home that you live in, but you don't get to take double exemptions. And I'm just saying, I'm just trying to get what is harsh and oppressive in this case. Now, forgetting that, you have said, and I want to just finalize my last question with this. You've said that the legislature has sandwiched in this kind of suggestion about temporal reach. And you may be correct that you should find that there should be some clear intent of temporal reach. So what case would you suggest that we look at to determine that this other language they have where they say we're going to go back three years, you can go back three years. What case would you say is the best one for us to look at to say that the temporal reach is not really present here? Well, I think the Kaveny case is the one that basically sets the test, Kaveny versus Power. And Kaveny even goes back as far as a case decided in 1904 dealing with a tax benefit. This is not a tax benefit, obviously, so it's the converse of a tax benefit. But the 1904 case, which is cited in Kaveny, basically involved an inheritance tax credit that was available after the effective date of the statute, and a taxpayer attempted to claim it for a year prior to the effective date of the statute. And the Supreme Court relied on the Section 4 of the Statute on Statutes and said no, it's no retroactive application. And I believe that that same principle is applicable here. But anyway, going forward, we've got another issue here that I think is very important, and that is the matter of the proof or the evidence indicating that there was, in fact, an erroneous homestead exemption applied to this property. The record is pretty clear that the administrative law judge admitted evidence and documents over objection without proper evidentiary foundation under the Illinois Rules of Evidence and Supreme Court Rule 236. They had no witness at the time of the hearing. They had to call this man down from his office on another floor of the building. We were delayed for a bit waiting for him to come. And when he came in, there were a couple of leading questions to which objections were overruled. They made a very vague attempt to establish a foundation about the only thing they were able to establish is that these records were kept by the assessor, not even these records. So the foundational requirements of the type of equipment they utilized, the testing of the equipment, the veracity of the equipment, the manner in which entries were made, the time in which entries were made, none of that was set forth. And over objection, those two records were admitted. But even looking at those two pieces of paper, the witness was never taken through the documents, was never asked to explain the documents. There's nothing out now of those documents that indicate the homeowner's exemption. So the evidence is totally lacking to even show a violation here. I think we're ready to wrap this up, Mr. Brogan, for right now. Mr. Boland, I'm sorry. Would you still like a few minutes for rebuttal? Yes, I would, please. Absolutely. Absolutely you can. Ms. Nelby? May it please the Court? As has been noted, the Erroneous Homestead Exemption Statute was enacted in order to recover an unlawful benefit that certain homeowners or property owners in the County of Cook received. They were never entitled to a homestead exemption for a property that was not their principal place of residence. This was a rampant problem in Cook County. Ms. Nelby, isn't there anything incumbent upon the taxing agency? Ms. Zilligan and I went around and around and around on this issue a few times in Special Remedies. So isn't there something incumbent upon the taxing agency to be aware and let the homeowner know and not let three years go by and then all of a sudden say, hey, by the way, you were wrong and we're going to get a penalty and interest and everything else for the last three years? Isn't there something that... Well, the responsibility actually lies with the property owner, and that's articulated in the Illinois Property Tax Code that when an owner obtains title to a property, they need to notify the assessor's office to make sure that there are no improper exemptions or exempt status on the property because ownership has changed, title has changed. We have no evidence that this was done in this case. That liability or that responsibility rests upon Mrs. Mulrey, and the assessor's office, I submit, did determine that there were these erroneous homestead exemptions, and once there was this procedure in place with the statute, they did notify Ms. Mulrey. Now, Ms. Mulrey also received tax bills for the property. Her testimony established that she didn't read them, but the second installment tax bill includes the itemization of the homestead exemption that was on the property. So you're saying that the assessor's office, in effect, did give her notice through the second tax bill? She did, in fact, have notice, yes. Okay. Thank you. Is it your position that there's nothing wrong with a retroactive application of a tax statute so long as the legislature indicates that that's what they want us to do, permit it? Yes, there is nothing wrong with it. First of all, the collection of taxes is, in its very nature, retroactive. The taxes for the year 2013 are due in 2014 and so on and so forth. So it's always, that collection is always an assessment going back in time. So here, for the assessor's office to recover the erroneous homestead exemption that was received in years prior only makes sense because they weren't even due until it was already considered a retroactive application of the law or a retroactive collection. Are you? Go ahead. Sorry. Go ahead. No. I was simply going to say, in this case, we're only talking about three years. And is there any indication or are you aware of when the legislature first enunciated the right to take a homeowner's exemption or homestead? I am not. Well, was there any right to take an exemption for a home that you didn't live in? Never. There were other exemptions, but this was one that was suggested as a homestead with the individual living in the home. Yes. That has always been a condition precedent for the homestead exemption is that the person, the taxpayer, claiming the homestead exemption must reside in that property and they are entitled to only one homestead exemption for the year. Now, what about counsel's suggestion that this language about the temporal reach has been sandwiched in the language so that it really is no indicator at all that the legislature wanted to go back three years? Well, there is no legal requirement that a statute to be retroactively applied include language that says this statute is to be retroactively applied. The cases that do not have that language or do have that specific language that Mr. Boland cites are cases where these statutes are amending preexisting statutes. So in light of the case that there is a preexisting statute, it does seem incumbent upon the General Assembly to clearly articulate when these amendments will take place because they are affecting pending cases. Here we do not have a preexisting statute that established the administrative procedure for the assessor to recover erroneous homestead exemptions. And I submit to the Court that throughout the statute itself, it is expressly stated that the General Assembly intended for the erroneous homestead exemption statute to allow the assessor to recover years prior to its enactment. But does this statute add penalties for past conduct? Does it penalize the person more than had the person been, so to speak, caught at the time doing it? I cannot speak to that because had the person been caught at the time, the remedy wasn't clearly articulated in the statute. It would have been a remedy that would have been either through an unjust enrichment suit through common law, which could have contemplated a penalty being assessed to the person claiming an erroneous homestead exemption. There was nothing in state law that allowed Cook County to come back and say, hey, you weren't supposed to do this. Pay us the rest of your taxes. Well, it doesn't seem like if this homestead exemption has been around since 1850, there had to be a mechanism to enforce it. Otherwise, wouldn't everybody say, every property I have, I'm going to have a homestead exemption on it? This is it? This is the only method they've come up with in 2013 to recover this? They could have corrected the tax bill. And if the homeowner refused to pay the corrected tax bill that had the principle that they had erroneously received, then the taxes could have been offered for sale. And that could have ultimately led to the loss of the property. That would have been the remedy that was available. But that's just available for overarching unpaid taxes. Nothing specific for an erroneous homestead exemption. And in light of the fact that there's... Well, then doesn't the plaintiff have a point that you are now increasing the penalty? You're not just going back, but you're actually penalizing them something for which no penalty existed at the time they committed the infraction. Well, there's no penalty in this case. This is a case where we're only recovering the principle and interest. That's it? Principle and interest only? On Ms. Mulrey's case, yes. Is this because of the statute or because there was some decision made? Because of the statute. Right. The statute would not permit penalties in this particular instance. That is correct. If we look at this case, there was never a penalty imposed. There was never a penalty imposed. Because there was never a penalty that could be imposed. Because Ms. Mulrey was claiming one erroneous homestead exemption on one property. So all you're doing is you're asking for the principle that she should have paid at the time, plus any interest that's accrued. And that's it? Yes. Okay. Why isn't this, though, a case where the taxing body is impairing a right a party possessed when he or she acted? Let's take them, each one, and have your response. Is this a law that impairs a right a party possessed? No, it is not. And why is that? Because Ms. Mulrey never had a right to the homestead exemption on the second property. She always had that tax liability. Why isn't this increasing a party's liability for past conduct? That's really what Mr. Boland said. He's hanging his hat. Why isn't it? It's not increasing the liability because it's simply seeking to recover the principle of the erroneous homestead exemption that was received. But you've indicated there really wasn't a mechanism to do this in the past. So aren't you really increasing a liability for past conduct? She was always responsible for the taxes on this property. She was always liable for the amount of taxes on this property. It was through her claim of the erroneous homestead exemption that she did not pay her full taxes. Would your argument then be kind of the same for imposing a new duty with respect to transactions already completed? Is that what you would say? Yes. What about harsh and oppressive? Well, when we look at harsh and oppressive, we look at four factors. And the facts of this statute do not support finding this statute so harsh and oppressive. We look at the legislative purpose, and the purpose here is the collection of taxes and the collection of principal balance that the homeowner or the taxpayer was not entitled to. We also look at the length of the period of retroactivity, and we're only talking about three years. And as I stated before, taxes are already collected in a retroactive fashion. The three-year period appears in other parts of the property tax code, including certificates of exemption, scavenger sales. Those are three years apiece. We can collect delinquent taxes for 20 years and certain bases for refunds the taxpayer can seek for a 20-year period. We also look to see if there's a reasonable or detrimental reliance. And in this case, the exemption was unlawful, so we cannot conclude that any sort of reliance was reasonable. And lastly, whether there was an adequate notice of the change, and there was at least a two-year period prior to the enactment and then enforcement of this statute. Does the mere fact that there's action being taken from conduct that antedated the state's enactment for the statute's enactment, does that make something retroactive automatically? No, it does not. Why not? Well, as stated in the Hayashi case, just because, and Landgraf, and a number of other cases, just because the behavior predated the enactment of the statute does not, in fact, make it retroactive. Are you attaching new legal consequences to events that have been completed? Are you asking? I'm asking you, does the statute attach new legal consequences to events that have already been completed, like the erroneous exemption? It more clearly and specifically articulates what the legal consequences of claiming an erroneous homestead exemption are. Well, is it your position that the statute basically says, going forward, we're just not going to let people take this anymore? Isn't that kind of what Hayashi said? If you've been convicted in the past for sexually assaulting a patient, going forward, we're not going to renew your license because of something you did last year? Yes. So Hayashi is distinguishable from the case that we have here in front of us. Hayashi involves a case where the plaintiff was convicted of a criminal offense and that criminal offense did not initially prohibit him from being licensed as a health care professional. But at some point in time, the General Assembly determined that they no longer wanted individuals convicted of sexual, criminal sexual abuse to be licensed under the state, and they determined at that point to enact the amended statute and have that applied. The Hayashi court found that that was a prospective statute and not a retroactive statute because the statute was not, in fact, going back in time and metting out a new punishment or penalty for the original criminal conviction, nor was it removing the licensure that predated the enactment of the statute. So in that matter, it was found not to be a retroactive statute but prospective only, even though the refusal to license health care professionals was based upon behavior that occurred prior to the enactment of the statute. What we have here is we have the assessor seeking to recover the unlawfully received tax benefit that occurred prior to the enactment of the statute. We have a direct relationship between the act of the individual and what is being sought to be recovered. Your position is that this statute is retroactive, but it is properly being applied retroactively because the legislature has indicated a temporal reach. Isn't that your position? Yes, it is. To read the statute any other way than to be retroactively applied would allow for a period of time of amnesty greater than what the statute anticipated. When the statute was enacted in July of 2013, it granted amnesty up and through December 31st of 2013. To anticipate that the assessor could only bring suits under this statute prospectively, it would require the assessor to wait either... Until 2017. Yes, exactly. And that is not in the statute at all. So after addressing the retroactive application and the constitutional... Let me ask you one more question, counsel. Yes. If there was no such statute, right now if let's say we have a new assessor comes in and says, okay, I'm going to clean this up. We've got a bunch of unpaid homestead or improper homestead exemptions. Like you said, it's a big mess. Let's just do a quick audit. Let's put a bunch of resources into that. And then they come up with all of these things. They have no statute. I think what the statute actually does is gives them a lien, right? Isn't that what this is? Endowments. Without this statute, would Cook County have been able to go back and say, hey, Ms. Maury, you had an improper tax homestead exemption in 2010. We're going to demand that you repay it now with interest or sue you if you don't. Could they have done that? I believe they could have. Under the common law or whatever, there's nothing that would have stopped them from doing it, absent perhaps a statute of limitations. Nothing would have stopped them from doing it. Or efficiency, that's correct. I assume part of the reason for a lien is exactly what you just said, efficiency. It's allowing to just take them all together and slap a lien down if they don't pay. Well, it allows for a remedy if the homeowner doesn't pay that doesn't amount in selling the property outright. All right. Okay. And as to the last basis of Ms. Maury's appeal, the evidence presented at the hearing supported the administrative hearing officer's decision that Ms. Maury did in fact receive an erroneous exemption and she was liable for the repayment of the principal plus interest for the three tax years of 2010, 11, and 12. The evidence presented regarding the erroneous exemption was uncontroverted, and at the hearing the foundation was established that this was a database that was relied upon in the regular course of business of the assessor's office. It has not been contested that Ms. Maury received an erroneous homestead exemption. That being said, the evidence presented allowed the court to make that determination, and we should review the evidence and the findings under the clearly erroneous standard, and this finding of the administrative law judge clearly was not erroneous. Ms. Maury did receive an erroneous homestead exemption for the three years and the assessment of liability in the amount of $4,000 is appropriate. Were the Illinois rules of evidence applicable to that proceeding? They are not. At administrative proceedings, rules of evidence are relaxed. The statute does state that the administrative hearing should, when possible, follow the rules of evidence of the circuit courts and other rules of proceeding, but historically rules of evidence are relaxed in administrative proceedings. All right, Ms. Noby, thank you very much for your presentation. Mr. Boland? Thank you. A couple of points. First of all, there is nothing in this record indicating the assessor having given notice to anybody. There is nothing in the record indicating that it was published in any newspaper. There is nothing in the record indicating it was inserted with any tax bill. Nothing in the record indicating it was inserted with any notice of assessment, which is typically given when there is a change in the assessment. The record is totally barren of any indication of notice, and the unrebutted testimony is that Mrs. Noby never saw the tax bill for this property for the years in question. So notice that she never received it or that she received it and she never looked at it? She received it, never noticed it, never saw it, never reviewed it. Her husband took care of the bill. Wait, wait, wait. Can anybody kind of ignorance them and say, oh, I didn't know, wow, so I'm not sure how that gets you where you need to go. I think there's an element of publication that is required on the effective date of this statute, particularly when we've got a retroactive, an attempt to apply it. But if they send it in something and they don't open the envelope, whose fault is that? No, under the law, that is good service, of course. If you have a certificate of service or you otherwise establish through foundational evidence, the method of mailing and that type of thing, yes, under the law, that is good service. But I'm just, the counsel indicated there was something in the tax bill. The tax bill was not part of the record. They never introduced the tax bill. Mr. Goland, you know, I think we all agree the traditional rule is that we don't generally interpret statutes to act retroactively. That that's not the general rule. Normally the legislature is acting prospectively. That is Illinois law. That's U.S. Supreme Court law as well. In fact, that's the traditional rule. When we had Landgraf was that if this legislature lets us know the temporal reach, in other words, if they let us know that they want to go back a few years to do something, that we can allow that absent any constitutional prohibition. And then we give that effect to the intent. Do you agree with that sort of summary? Yes. Yes, I do. But that's not expressed here. Okay. Well, all I'm asking is I'm trying to confirm some basic principles. So here's my question. If we conclude that the legislature did give us this temporal reach when they said you can go back three years previous, if we interpret that as enunciating temporal reach, isn't that the end of the discussion, absent constitutional prohibition? I don't believe so. All right. That would conflict with well-established Illinois Supreme Court precedent. It would also conflict with this. Isn't I just saying what Landgraf in every single Illinois Supreme Court case says, that when the legislature indicates a temporal reach of a statute, we give it its effect absent a constitutional prohibition? That is the holding of Landgraf. All right. And all the other Illinois Supreme Court cases. So I guess what I'm saying is if we find the language in this statute, even though one of your arguments is it's sandwiched in, if we find the language evidences a temporal reach to go back those three years, absent a constitutional prohibition, we're supposed to give that legislative intent its due, are we not? Yes, that is correct. But there's another element to this case, and that's the evidentiary issue. And our contention is that the county has not proven a violation of the statute. Sure, and I know that's your other argument. I was just going back to this first one about temporal reach. But if there's a constitutional prohibition, if this were a denial of substantive due process or it was in violation of the contract clause, then we wouldn't give it that intent. Correct. All right. Thank you. All right, thank you, Mr. Bowen. Thank you, both sides counsel. The arguments were very creative and very well briefed. We will take it under advisement and stand in recess. Thank you.